IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.  : | Crim. No. 18-180-2 |
| : | |
| LUIS ALGARIN-TORRES  : | |
| : | |

**Diamond, J.**                                                                                                                                  February 21, 2024

## MEMORANDUM OPINION

After a three-day trial, the jury found Luis Algarin-Torres guilty of possession of a firearm altered to fire automatically in furtherance of a drug trafficking crime and possession of a firearm by a convicted felon. 18 U.S.C. §§ 922(g), 924(c)(1)(A), 924(c)(1)(B)(ii). Sentencing is set for March 20, 2024. Algarin-Torres now moves for acquittal as to the § 924(c)(1)(B)(ii) charge, arguing that the Government did not prove that he knew the gun had been altered to fire automatically. Fed. R. Crim P. 29(c); (Doc. No. 348.) He has waived the issue. Moreover, the Government proved at trial that Algarin-Torres knew the gun had been made fully automatic. Finally, knowledge is not an element of the offense. I will deny the Motion on these alternate grounds.

    **I.**       **BACKGROUND**

From November 2016 through February 2018, the Drug Enforcement Administration investigated Algarin-Torres, his co-conspirators, and their drug packaging and distribution enterprise. (Doc. No. 115; Doc. 344 at 35-36, 94.) A confidential source arranged several controlled drug purchases from Algarin-Torres and his co-conspirators. (Doc. No. 115; Doc. No. 271 at 1; Doc. No. 344 at 35-36, 97.) During a May 22, 2017 controlled crack cocaine purchase at Algarin-Torres's home—where he lived with his fiancé and children—the source saw Algarin-

Torres take the drugs from a compartment hidden above the light fixture in his laundry room. (Doc. No. 271 at 1; Doc. No. 344 at 19, 41, 53-54, 100, 106-10.)

On May 10, 2018, police arrested Algarin-Torres at his home, which they searched, finding cash, crack cocaine, and a Glock handgun hidden in the light fixture compartment. (Doc. No. 115; Doc. No. 271 at 1; Doc. No. 344 at 18-19, 56-57.) Loaded with 18 rounds of live ammunition, the Glock had been modified to fire automatically. (Doc. No. 271 at 1; Doc. No. 344 at 19.)

Algarin-Torres and his co-defendants were charged with drug, firearms, and related offenses. (Doc. No. 77.) On March 15, 2019, Algarin-Torres pled guilty to the drug trafficking charges. (Doc. No. 120.) He thus admitted that the crack and cash found in the compartment with the Glock were his. (Doc. No. 344 at 19; Doc. No. 346 at 18.) He denied that the gun was his, however. (Doc. No. 120.) On February 20, 2020, the Grand Jury returned a Second Superseding Indictment charging Algarin-Torres with the firearm crimes I have described. (Doc. No. 196.)

At trial, Algarin-Torres freely acknowledged that he was a drug dealer, but denied the Glock was his. Rather, he sought to convince the jury that the gun belonged to one of his co-conspirators who also had access to the house. (Doc. No. 346 at 33.) His former cellmate, W.C., testified, however, that Algarin-Torres had told him that the gun was his and had a "switch," allowing it to fire automatically. (Doc. No. 345 at 187-90.) The confidential source also testified that she had seen Algarin-Torres carry a gun and gain access to the hidden compartment. (Doc. No. 344 at 108-13.)

In a special interrogatory, the jury found that the Glock had been modified to work as a machine gun. (Doc. No. 327 at 2.) Algarin-Torres did not argue that knowledge of the gun's alteration was an element of § 924(c)(1)(B)(ii). Accordingly, the jury was not instructed—and did not explicitly find—that Algarin-Torres knew that the Glock had been modified to fire

2

automatically.  The jury found Algarin-Torres guilty of both Counts.  Because the jury found that the firearm was a machine gun, Algarin-Torres is subject to a 30-year mandatory minimum term of incarceration.  See 18 U.S.C. § 924(c)(1)(B)(ii).

On October 20, 2023, I granted Algarin-Torres's Motion to Continue Sentencing and allowed him to submit the instant Rule 29(c) Motion for acquittal on the § 924(c)(1)(B)(ii) charge. (Doc. Nos. 341, 348.)

## II.     LEGAL STANDARDS

Rule 29(c) permits a convicted defendant to challenge the sufficiency of the Government's trial evidence.  Fed. R. Crim. P. 29(c).  I must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence."  United States v. Wolfe, 245 F.3d 257, 261 (3d Cir. 2001).  The defendant's burden is "extremely high."  United States v. Igelsias, 535 F.3d 150, 155 (3d Cir. 2008).  I must "draw all reasonable inferences in favor of the jury verdict," and may not usurp the jury's role.   United States v. Anderskow, 88 F.3d 245, 251 (3d Cir. 1996); United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005).

## III.    DISCUSSION

Algarin-Torres has waived his belated contention that § 924(c)(1)(B)(ii) requires proof that he knew the Glock was capable of automatic fire.  Even if not waived, knowledge is not an element of § 924(c)(1)(B)(ii).  Finally, even if knowledge is an element, the Government proved knowledge at trial.

### A.     Algarin-Torres Waived This Issue

Having first raised his knowledge contention after trial, Algarin-Torres has waived the

issue.  (See Doc. No. 346); United States v. Oliva, 46 F.3d 320, 325 (3d Cir. 1995) (failure to raise issue as defense or ask for jury instructions amounts to waiver); United States v. Tiller, 302 F.3d 98, 105 (3d Cir. 2002) ("Failure to object at trial, absent plain error, constitutes a waiver of the issue for post-trial purposes"); United States v. Smith, No. 10-cr-489-2, 2014 WL 3765316, at *4 (E.D. Pa. July 31, 2014) (same).

Where an issue has been waived, I may grant relief only where there is "an error that is plain[,]…affects substantial right[,][and]…seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Gambone, 314 F.3d 163, 182 (3d Cir. 2003). Given the Third Circuit's silence on the knowledge issue, the purported error "is not sufficiently 'plain' to warrant reversal." United States v. Jabateh, 974 F.3d 281, 298 (3d Cir. 2020).

Algarin-Torres apparently argues that I should excuse his waiver because the single authority on which he bases his contention (United States v. Pérez-Greaux) was decided after his trial concluded. 83 F.4th 1 (1st Cir. 2021); (Doc. No. 348.) Assuming Algarin-Torres seeks to make this argument—and that is not clear—it is meritless.

The holding in Pérez-Greaux was not new. To the contrary, the First Circuit explicitly based its sufficiency ruling on a decision that predates Algarin-Torres's trial. See United States v. Torres-Perez, 22 F.4th 28, 32 (1st Cir. 2021) (expert's testimony that alterations on Glock making it a machine gun were obvious to the defendant and so made out knowledge); Pérez-Greaux, 83 F.4th at 26. Once again, the Third Circuit has not addressed whether knowledge is an element of § 924(c)(1)(B)(ii). Given the lack of new, controlling authority, Algarin-Torres has not shown good cause to excuse his waiver. See United States v. Rose, 538 F.3d 175, 184 (3d Cir. 2008) (absent showing of good cause, issues not raised are waived); United States v. Watson, No. 19-cr-203, 2021 WL 4200044, at *3 (W.D. Pa. Sept. 15, 2021) (issue waived absent "change in law or

4

in the facts which support a finding of good law"); United States v. Botsvynyuk, No. 10-cr-159-1, 2012 WL 2885928, at *8 (E.D. Pa. July 16, 2012), aff'd, 552 F. App'x 178 (3d Cir. 2014) (denying Rule 29 motion because "Defendant has not even suggested excusable neglect or good cause to excuse the waiver").

In these circumstances, Algarin-Torres has waived the knowledge issue.

### B. Knowledge is Not an Element of § 924(c)(1)(B)(ii)

Even if the issue is not waived, the Government was not required to prove that Algarin-Torres knew the Glock could fire automatically. Accordingly, I conclude in the alternative that the issue is meritless.

A § 924(c) conviction requires the Government to prove: (1) the defendant committed a drug trafficking crime, and that (2) in furtherance of the crime, the defendant possessed a firearm. 18 U.S.C. § 924(c)(1)(A). Relying exclusively on Pérez-Greaux, Algarin-Torres urges that a conviction under § 924(c)(1)(B)(ii) requires proof that the defendant knew that the firearm is a machine gun. (Doc. No. 348.) Although neither the Supreme Court nor this Circuit has directly addressed the question, four Circuits have held that § 924(c)(1)(B)(ii) has no such knowledge element. See, e.g., United States v. Haile, 685 F.3d 1211, 1218 (11th Cir. 2012) (United States v. O'Brien, 560 U.S. 218, 222 (2010) only made possession of a machine gun an element of § 924(c), and not knowledge that it could fire automatically); United States v. Burwell, 690 F.3d 500 (D.C. Cir. 2012) (same); cf. United States v. Nava-Sotelo, 354 F.3d 1202, 1206 (10th Cir. 2003) (pre-O'Brien); United States v. Gamboa, 439 F.3d 796, 812 (8th Cir. 2006) (pre-O'Brien).

I "start, as always, with the language of the statute." Williams v. Taylor, 529 U.S. 420, 431 (2000). The text of § 924(c)(1)(B)(ii) does not require that the possessor has knowledge the

firearm is a machine gun. I must "ordinarily resist reading words or elements into a statute that do not appear on its face." Dean v. United States, 556 U.S. 568, 572 (2009) (quoting Bates v. United States, 522 U.S. 23, 29 (1997)). The structure of the statute similarly suggests the absence of a knowledge requirement. As the Supreme Court noted in Dean, Congress explicitly included an intent requirement for other subsections of § 924(c). See id. ("brandish" requires intent because brandishing must be done for a specific purpose). By contrast, "Congress did not . . . separately define 'discharge' [or § 924(c)(1)(B)(ii)] to include an intent requirement." Id. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983).

This canon does not apply to every statute that lacks *mens rea*. United States v. United States Gypsum Co., 438 U.S. 422, 437 (1978) (courts have "on a number of occasions read a state-of-mind component into an offense even when the statutory definition did not in terms so provide."). Courts have long held that "wrongdoing must be conscious to be criminal." Morissette v. United States, 342 U.S. 246, 250 (1952). Although there are exceptions, the "general rule" is that a guilty mind is "a necessary element in the indictment and proof of every crime." United States v. Balint, 258 U.S. 250, 251 (1922). Where a federal statute is silent as to *mens rea*, however, I may read into the statute only that "mens rea which is necessary to separate wrongful conduct from otherwise innocent conduct." Carter v. United States, 530 U.S. 255, 269 (2000).

The Supreme Court has repeatedly applied this principle. See, e.g., Staples v. United States, 511 U.S. 600, 605 (1994); Liparota v. United States, 471 U.S. 419, 426 (1985) (*mens rea* necessary because "to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct"); United States v. X-Citement Video, Inc., 513 U.S. 64, 72 (1994)

6

(absent requirement of knowledge that material is sexually explicit and displays minors, statute prohibiting possession of material showing sexual exploitation of minors "would sweep within the ambit . . . actors who had no idea that they were even dealing with sexually explicit material.")

For example, in Staples, the Court inferred the existence of a *mens rea* requirement where the statute made it unlawful for any person to receive or possess an unregistered firearm. 511 U.S. at 605. The Court reasoned that without such a requirement, individuals who believed they lawfully possessed firearms might be punished. Id. at 605, 610 (Without inference, statute would criminalize behavior that individuals believed was innocent fell within "a long tradition of widespread lawful gun ownership by private individuals.") "[I]f Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, and to subject them to lengthy prison terms, it would have spoken more clearly to that effect." Id. at 620.

These concerns do not arise here. I need not read *mens rea* into § 924(c)(1)(B)(ii) because possession of *any* firearm in furtherance of a drug trafficking crime constitutes wrongful conduct. See 18 U.S.C. § 924(c)(1)(A). Were the firearm unaltered, Algarin-Torres still would have committed a crime under § 924(c). See id. Accordingly, rejection of Algarin-Torres's argument does not risk criminalizing innocent conduct. A defendant subject to § 924(c)(1)(B)(ii) "knows from the very outset that his planned course of conduct is wrongful." United States v. Feola, 420 U.S. 671, 685 (1975). It is not "unusual to punish individuals for the unintended consequences of their *unlawful* acts." Dean, 556 U.S. at 568 (analogizing to felony-murder rule); Burwell, 690 F.3d at 507 (applying Dean to § 924(c)(1)(B)(ii)). Simply because an individual does not know that the gun is a machine gun "does not mean that the defendant is blameless," as § 924(c)(1)(B)(ii) "accounts for the risk of harm resulting from the manner in which the crime is carried out, for

which the defendant is responsible." Dean, 556 U.S. at 576. "Those criminals wishing to avoid the penalty for [possessing a machine gun] can . . . leave the gun at home, or—best yet—avoid committing the felony in the first place." Id.

In sum, § 924(c)(1)(B)(ii) does not require proof of knowledge that the subject firearm is a machine gun.

### C. Algarin-Torres Knew the Glock was a Machine Gun

Finally, I conclude in the further alternative that the Government proved at trial that Algarin-Torres knew the Glock could fire automatically.

Government witness W.C. shared a cell with Algarin-Torres after his arrest. W.C. testified that Algarin-Torres said he had a "greenish black gun with a switch on it" that "makes [the Glock] fully automatic. I mean, you hold the trigger down, it lets off a lot of rounds, the whole clip." (Doc. No. 345 at 188-189.) Algarin-Torres also told W.C. that the gun had been altered by the person from whom he had purchased it. (Id.)

Algarin-Torres seeks to read this testimony out of the record, arguing that he told W.C. only what he had learned by reviewing discovery the Government had provided. This is nonsense. Nothing in the discovery informed Algarin-Torres that the Glock had been altered by the people from whom he purchased it. In any event, Algarin-Torres's brief statement to W.C. about discovery, was distinct from his and W.C.'s discussion "about the gun charge." (Id. at 188). Reading the evidence in the light most favorable to the Government—my obligation at the Rule 29 stage—Algarin-Torres plainly told W.C. that he knew the gun had been altered to fire automatically. See Anderskow, 88 F.3d at 251.

Algarin-Torres argues that even if the Government proved Algarin-Torres's knowledge,

the § 924(c)(1)(B)(ii) conviction fails because the jury "was not instructed" of the knowledge requirement. (Doc. No. 348 at 4.) Yet, in Pérez-Greaux—Algarin-Torres's only legal authority—the First Circuit ruled that the knowledge evidence was sufficient even in the apparent absence of a related jury instruction.

> Here, crediting the government's witnesses, as we must on a Rule 29 motion, the cumulation of evidence reveals that the firearm in question was indeed a machinegun as federal law defines it and that a reasonable jury could draw the reasonable inference that Pérez-Greaux knew it was one.

Id. at 27. The First Circuit was satisfied that the Government proved Pérez-Greaux's knowledge with expert testimony that the gun had been visibly altered, that Pérez-Greaux had "handled" the gun, and that it was loaded with a large ammunition chip. Id. at 26-28. The Government presented the same evidence against Algarin-Torres. Firearms expert Nicholas Campbell testified that the Glock had been visibly altered to fire automatically. (Doc. 345 at 131-47.) The confidential source testified that she saw Algarin-Torres with a gun, and that she had seen Algarin-Torres put crack in the hidden compartment in which the Glock was found. (Doc. No. 344 at 107-13.) Finally, W.C. testified that Algarin-Torres said he knew the gun had been altered to fire automatically.

In these circumstances, the Government proved the § 924(c)(1)(B)(ii) knowledge element, even though it was not required to do so.

## IV. CONCLUSION

In sum, there is no reasonable basis on which to overturn Algarin-Torres's § 924(c)(1)(B)(ii) conviction. Accordingly, I will deny his Rule 29(c) Motion.

9

An appropriate Order follows.

                                                                                     **AND IT IS SO ORDERED.**

                                                                                     */s/ Paul S. Diamond*
                                                                                     _____
                                                                                     Paul S. Diamond, J.

February 21, 2024